

**ORDERED in the Southern District of Florida on May 19, 2025.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
### www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No.: 21-12188-PDR |
| No Rust Rebar, Inc., | Chapter 7 |
|     Debtor. | |
| _____/ | |
| Sonya Salkin Slott, Chapter 7 Trustee, | |
|     Plaintiff, | |
| v. | Adv. Proc. No. 23-01082-PDR |
| Don Smith, | |
|     Defendant. | |
| _____/ | |

### ORDER GRANTING PLAINTIFF'S MOTION FOR
### SUMMARY JUDGMENT AND DENYING
### <u>DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>

This adversary proceeding is the final chapter in a multi-stage response to the Debtor's—through its principal's—abuse of the bankruptcy process and disregard for corporate separateness. It began with the Subchapter V filing of No Rust Rebar, Inc. ("No Rust" or the "Debtor"), a company that, under the direction of its principal, Don Smith, failed to disclose key financial information, commingled assets with related entities, and proposed no feasible path to reorganization.

Following a contested evidentiary hearing, the Court converted the case to Chapter 7, citing gross mismanagement, incomplete and inaccurate schedules, and improper diversion of estate value. The Chapter 7 Trustee subsequently moved for, and obtained, substantive consolidation of four affiliated entities that operated under Smith's common control and were deeply entangled with No Rust in both form and substance. That consolidation—later affirmed on appeal—brought into the estate assets that had been improperly diverted, including shares of stock sold postpetition for over $1.2 million. The proceeds of that sale were transferred directly to Smith without Court authorization.

The Trustee filed this adversary proceeding under 11 U.S.C. §§ 549 and 550 to recover the unauthorized transfer. The issues now before the Court lie at the intersection of postpetition transfers, insider control, and the legal consequences of substantive consolidation. For the reasons set forth below, the Court finds that the Transfer must be avoided and that Smith, as the initial transferee, is liable. Summary judgment is appropriate.

I.     **Background**

This matter came before the Court for hearing on March 12, 2025 (the "Hearing"), on Plaintiff, Sonya Salkin Slott's *Motion for Summary Judgment Against Defendant Don Smith on Count I of the Amended Adversary Complaint, or in the Alternative, for Entry of an Order Treating Certain Material Facts as Established in the Case* (the "Motion for Summary Judgment")[1] and Defendant Don Smith's *Opposition to Motion for Summary Judgment and Cross-Motion for Summary Judgment* (the "Cross-Motion for Summary Judgment").[2]

No Rust was a Florida corporation formed in 2015. Its business centered on commercializing a proprietary process for manufacturing rebar from basalt fiber which was purportedly developed by its principal, Don Smith.[3] Smith operated No Rust alongside several other of his closely held entities, including Raw Materials Corp. ("RMC"), Raw Energy Materials, Inc. ("REM"), Global Energy Sciences, LLC ("GES"), and Raw, LLC ("RAW") (collectively the "Corporate Entities"). These entities, together with No Rust, were referred to collectively by Smith as "the Family" and shared physical space, staff, and financial resources.[4]

In February 2017, Smith orchestrated a transaction with PayMeOn, Inc., a

---

[1] Adv. Doc. No. 34. References to documents filed in this adversary proceeding will be preceded by "Adv. Doc. No."

[2] Adv. Doc. No. 74.

[3] See *Order Converting Case to Chapter 7* (Main Doc. No. 193) ("Conversion Order"), at 2-3. References to documents filed in the main bankruptcy case will be preceded by "Main Doc. No."

[4] Conversion Order at 10–11; See *Order Granting Trustee's Motion to Substantively Consolidate* (Main Doc. No. 441) (the "Substantive Consolidation Order") at 8.

publicly traded company, through the Family. In the transaction: (i) No Rust provided machinery, basalt fiber, and finished inventory; (ii) RMC received $2.4 million in cash; (iii) RAW received 10 million shares of PayMeOn stock; (iv) No Rust received no consideration, and (v) PayMeOn received an exclusive license to sell basalt rebar in Florida and the Caribbean.[5]

On March 5, 2021 (the "No Rust Petition Date"), No Rust filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code.[6] No Rust's petition identified RAW as No Rust's d/b/a or fictitious name.[7] The bankruptcy was prompted by protracted litigation involving a "property dispute" between No Rust and Green Tech Development, LLC ("Green Tech") over the real property used by No Rust.[8] From the outset, No Rust's schedules reflected substantial irregularities, failed to disclose receivables due from RMC, failed to identify d/b/a accounts, and failed to accurately report inventory.[9]

Following the filing, No Rust made no meaningful progress with its reorganization. The company lacked access to power at its primary facility, had no alternate operational site, and according to Smith, the reorganization depended entirely on speculative funding and a successful resolution of the pending "property

---

[5] Conversion Order at 6; Substantive Consolidation Order at 7.

[6] Main Doc. No. 1.

[7] Id. No Rust had also listed "Raw, LLC" as its fictitious name with the State of Florida. Conversion Order at 21.

[8] Conversion Order at 8–9.

[9] Conversion Order at 7–8.

dispute" with Green Tech.[10] Thus, while the Subchapter V Trustee initially recommended that No Rust remain as a debtor in possession, she later reversed course, citing evidence of asset commingling, recordkeeping failures, and the absence of any viable business activity.[11]

After a four-day evidentiary hearing in May of 2022, the Court found that cause existed under 11 U.S.C. § 1112(b) to convert the case. In particular, the Court cited, among other things: (i) No Rust's failure to file complete, accurate schedules; (ii) Smith's use of affiliated entities to divert and conceal value; (iii) gross mismanagement of estate resources; and (iv) No Rust's complete lack of operations or prospects for reorganization.[12] The Conversion Order was never appealed.[13]

The evidence developed during the conversion proceedings revealed that Smith routinely used the Family entities interchangeably, transferring funds among them without documentation, placing "No Rust Rebar, Inc." as a d/b/a on RMC's accounts while also, as stated, including RAW as a d/b/a of No Rust, and commingling ownership and assets.[14] As an example, on April 14, 2021, while the bankruptcy case was pending, RAW entered into a litigation settlement agreement whereby it sold its

---

[10] Conversion Order at 6, 9-10.

[11] Conversion Order at 12.

[12] Conversion Order at 19-30.

[13] Because the Conversion Order was never appealed, its findings are deemed to be true. *See In re Cummings*, 381 B.R. 810, 823 (S.D. Fla. 2007) (Gold, J.), *cited by Smith v. Slott,* Case No. 22-cv-61666-RKA, *Order Affirming Bankruptcy Court,* July 20, 2023 (S.D. Fla) (Altman, J.), (Main Doc. No. 536) ("Order Affirming Substantive Consolidation") at 5, fn. 5.

[14] Conversion Order at 20-23; Substantive Consolidation Order at 14–16.

10 million PayMeOn shares to Basanite, Inc. for $1,212,121.00. RAW had no bank account, so the proceeds were wired directly to Don Smith, personally (the "Transfer"). The Transfer was never disclosed to the Court, and no Court approval was sought or obtained.[15] This is the Transfer the Trustee seeks to recover in this adversary proceeding.

Following the May 2022 conversion of the case, Sonya Salkin Slott was appointed Chapter 7 Trustee.[16] On February 3, 2023, the Trustee filed a motion in the main case seeking to substantively consolidate the assets and liabilities of the Corporate Entities RMC, REM, GES, and RAW into the No Rust estate (the "Substantive Consolidation Motion").[17] On April 5, 2023, the Trustee commenced this adversary proceeding against Debtor's former principal, Don Smith, and the Corporate Entities. In her initial complaint, the Trustee sued Smith pursuant to 11 U.S.C. § 549 to avoid and recover the Transfer and sued the Corporate Entities seeking a declaratory judgment that each entity was the alter ego of No Rust.[18]

On July 12, 2023, the Court granted the Trustee's Substantive Consolidation Motion, finding, among other things, that the assets and operations of the Debtor and the Corporate Entities were hopelessly entangled rendering separate treatment

---

[15] Conversion Order at 21-22; Substantive Consolidation Order at 11; Plaintiff's Statement of Material Facts (Adv. Doc. No. 35) at ¶ 10; Opponent's Statement of Material Facts (Adv. Doc. No. 77) at ¶ 10.

[16] Main Doc. No. 195.

[17] Main Doc. No. 385.

[18] Adv. Doc. No. 1.

impractical and inequitable, and substantively consolidating the Corporate Entities into No Rust's estate.[19] As such, the assets of the Corporate Entities became property of the consolidated Chapter 7 estate as of the No Rust Petition Date.[20]

In its ruling, the Court expressly incorporated and relied upon the factual findings made in the earlier Conversion Order, stating that "no new evidence or argument is necessary to adjudicate the issue of substantive consolidation. All of the essential factual findings in support of consolidation have already been found."[21] Accordingly, the relevant findings made in the Conversion Order were reaffirmed and incorporated into the Substantive Consolidation Order's factual findings and legal conclusions.

Don Smith appealed the Substantive Consolidation Order, but not the Conversion Order.[22] On July 20, 2023, the District Court affirmed the Substantive Consolidation Order in its entirety, concluding, among other things, that "the Bankruptcy Court's decision to apply, in its consolidation analysis, the factual findings it made during the conversion proceedings" was proper.[23] The Order Affirming Substantive Consolidation has been appealed by Smith to the Eleventh

---

[19] Substantive Consolidation Order as clarified by the *Court's Sua Sponte Order Stating Intended Meaning of Order Granting Trustee's Motion to Substantively Consolidate* (Main Doc. No. 514).

[20] Id.

[21] Substantive Consolidation Order at 33.

[22] Main Doc. No. 469. The appeal was heard by Judge Roy K. Altman in Case No. 22-cv-61666-RKA.

[23] Order Affirming Substantive Consolidation (Main Doc. No. 536) at 56.

Circuit.[24]

On August 2, 2023, presumably in light of the Substantive Consolidation Order, the Trustee filed an Amended Complaint removing the alter ego declaratory judgment count against the Corporate Entities leaving only the one count against Don Smith under 11 U.S.C. §§ 549 and 550, seeking to avoid and recover from him the postpetition $1,212,121.00 Transfer.[25]

## II.    Jurisdiction and Venue[26]

This Court has subject matter jurisdiction over the proceeding under 28 U.S.C. § 1334. The Court has statutory authority to hear and determine this matter under 28 U.S.C. § 157(b)(2)(A), (E), and (H). Venue is proper under 28 U.S.C. § 1409.

## III.    Findings of Facts and Conclusions of Law[27]

Summary judgment is appropriate where there is "no genuine dispute as to

---

[24] Main Doc. No. 538. There is no stay of the Substantive Consolidation Order pending appeal. Main Doc. No. 429.

[25] Adv. Doc. No. 14.

[26] While Smith's papers did not address the issue, the Court is cognizant that the filing of a notice of appeal generally divests a lower court of jurisdiction over those aspects of the case involved in the appeal. *Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley),* 494 F.3d 1320, 1328 (11th Cir. 2007). Divestiture is not absolute, and this Court retains jurisdiction to proceed with matters that are not involved in the appeal, or that are collateral to the appeal. Id.; see also *Mahone v. Ray*, 326 F.3d 1176, 1179 (11th Cir. 2003). Here, the avoidance action proceeds under § 549 based in part on the Court's prior Substantive Consolidation Order which is currently on appeal. That order remains in effect unless and until reversed. Adjudicating the § 549 claim under the current posture does not modify or undermine the order on appeal; it merely applies it. Should the Substantive Consolidation Order be reversed, the resulting judgment in the avoidance action may need to be reconsidered. That possibility, however, reflects a merits contingency—not a jurisdictional defect.

[27] The Court issues these findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, and judgment shall be entered separately pursuant to Fed. R. Bankr. P. 7058. See Fed. R. Civ. P. 52(a) and 58, made applicable to these proceedings through Fed. R. Bankr. P. 7052 and 7058.

any material fact" and the movant is entitled to judgment as a matter of law.[28] The movant bears the initial burden of showing that there is no genuine dispute as to any material fact.[29] An "issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."[30] Once the moving party meets that burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact.[31] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice."[32] At the summary judgment stage, the Court will not weigh the evidence or find facts; rather, the Court determines only whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party.[33]

Here, the Plaintiff seeks to avoid and recover from Don Smith, the postpetition Transfer under 11 U.S.C. §§ 549 and 550. To prevail under § 549(a), a trustee must establish the following elements: (i) there was a transfer; (ii) the transfer involved property of the estate; (iii) the transfer occurred after the commencement of the case; and (iv) the transfer was not authorized by the Bankruptcy Code or by order of the

---

[28] Fed. R. Civ. P. 56(a), incorporated via Fed. R. Bankr. P. 7056; see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

[29] *Celotex*, 477 U.S. at 322-23.

[30] *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

[31] *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990).

[32] Id. at 1577 (citing *Anderson*, 477 U.S. at 252).

[33] *Morrison v. Amway Corp*., 323 F.3d 920, 924 (11th Cir. 2003) (citing *Anderson*, 477 U.S. at 249).

Court. Upon avoiding the Transfer under § 549, the Trustee may recover the property transferred or the value of such property, pursuant to § 550(a), unless that transferee establishes a defense under § 550(b).

A.   The $1,212,121.00 Transferred Was Property of the Estate

Smith does not dispute that the Transfer occurred[34] but challenges whether the Transfer constituted property of the estate under 11 U.S.C. § 541 such that the Trustee may utilize 11 U.S.C. § 549.

1.   Substantive Consolidation Confirms That RAW's Assets Were Property of No Rust's Estate

The Court's Substantive Consolidation Order was entered on July 12, 2023, substantively consolidating RAW and the other Corporate Entities, including their assets, into the Debtor's estate as of the No Rust Petition Date.[35] Substantive consolidation involves combining "all the assets of a group of entities into a single survivor," typically the debtor, for purposes of satisfying creditor claims.[36] The process "involves the pooling of the assets and liabilities of two or more related entities" such that "the liabilities of the entities involved are then satisfied from the common pool of assets created by consolidation."[37] As a result of consolidation, the

---

[34] Plaintiff's Statement of Material Facts (Adv. Doc. No. 35) at ¶ 10; Opponent's Statement of Material Facts (Adv. Doc. No. 77) at ¶ 10.

[35] Substantive Consolidation Order as clarified by the *Court's Sua Sponte Order Stating Intended Meaning of Order Granting Trustee's Motion to Substantively Consolidat*e (Main Doc. No. 514).

[36] *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005).

[37] *Eastgroup Props. v. Southern Motel Ass'n, Ltd.*, 935 F.2d 245, 248 (11th Cir. 1991).

combined entities are treated as a single debtor.[38] The Court's Substantive Consolidation Order was affirmed[39] thus upholding the substantive consolidation of RAW into the Debtor's estate as of the No Rust Petition Date. Although the Order Affirming Substantive Consolidation Order has been appealed to the Eleventh Circuit, there is no stay pending appeal.[40]

The assets of RAW, including the PayMeOn shares and the $1,212,121.00 proceeds from their postpetition sale, were substantively consolidated with the Debtor's, as of the No Rust Petition Date, and were therefore property of the bankruptcy estate under 11 U.S.C. § 541 as a matter of law.

2.    The Stock Was Property of No Rust's Estate Even Absent Substantive Consolidation

Property of the estate is defined in 11 U.S.C. § 541(a)(1) as all legal or equitable interests of the debtor in property, wherever located or by whomever held, as of the commencement of the case.[41] While federal bankruptcy law governs what is property of the estate, state law creates and defines a debtor's property interest.[42] No Rust's petition, executed by Smith under penalty of perjury, identified RAW as No Rust's

---

[38] *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988).

[39] Order Affirming Substantive Consolidation Order.

[40] Main Doc. No. 429.

[41] 11 U.S.C. § 541(a).

[42] *Butner v. United States*, 440 U.S. 48, 55 (1979).

fictitious name.[43] It is undisputed that the PayMeOn stock was held by RAW.[44] Since RAW was the fictitious name (d/b/a) of No Rust, by Smith's own admission the PayMeOn stock was property of the estate as of the No Rust Petition Date, even absent substantive consolidation.[45] Consequently, the postpetition transfer of that stock or any proceeds thereof without Court authorization subjects it to avoidance under 11 U.S.C. § 549.[46]

B.   <u>The Transfer Was Postpetition and Unauthorized</u>

The Transfer to Smith was made after the No Rust Petition Date and was made therefore, by definition, postpetition. It is undisputed that Smith as the principal of the Debtor, which included RAW, did not seek, and did not obtain, Court approval of the Transfer.[47]

Smith argues that because the Substantive Consolidation Order had not yet been entered at the time of the Transfer, and because RAW—the transferor—had not independently filed for bankruptcy, the Transfer cannot be deemed "postpetition."[48]

---

[43] Main Doc. No. 1. No Rust had also listed "Raw, LLC" as its fictitious name with the State of Florida. Conversion Order at 21.

[44] Plaintiff's Statement of Material Facts (Adv. Doc. No. 35) at ¶ 5; Opponent's Statement of Material Facts (Adv. Doc. No. 77) at ¶ 5.

[45] Florida Statutes § 865.09; see also *In re Stanley-Sw. Invs., Inc.,* 96 B.R. 701, 704 (Bankr. W.D. Tex. 1988) ("If the property transferred is that of the debtor doing business as Stanley Travel, however, the transfer may be avoided under either Section … 549.")

[46] Id.

[47] Conversion Order at 9; Plaintiff's Statement of Material Facts (Adv. Doc. No. 35) at ¶ 10; Opponent's Statement of Material Facts (Adv. Doc. No. 77) at ¶ 10.

[48] Cross-Motion for Summary Judgment at 4-6.

He further contends that he lacked notice and could not have reasonably foreseen that substantive consolidation would be ordered.[49] These arguments are unavailing. The timing of the entry of the Substantive Consolidation Order is legally irrelevant to the analysis because, as ordered, substantive consolidation was effective as of the No Rust Petition Date. As a result, RAW's assets and liabilities were deemed consolidated with No Rust and were part of the bankruptcy estate as of that date. Therefore, the Transfer—which occurred after the No Rust Petition Date—occurred postpetition as a matter of law.

Lack of pre-transfer notice or foreseeability of consolidation does not immunize postpetition conduct under § 549. To the contrary, § 549 imposes strict liability for unauthorized postpetition transfers of estate property and is designed to protect estate assets from unauthorized transfers regardless of the transferor's knowledge or intent.[50] This structure ensures estate integrity and fairness to all creditors and applies equally to insiders and fiduciaries.

The Trustee thus need not prove that Smith—or any party—anticipated that substantive consolidation would occur. Once the Substantive Consolidation Order was entered, the consolidated estate is deemed to have existed ab initio as of the No Rust Petition Date. As such, any transfer of property that, by operation of law, is

---

[49] Id.

[50] *See Marathon Petroleum Co., LLC v. Cohen (In re Delco Oil, Inc.)*, 599 F.3d 1255, 1263 (11th Cir. 2010) ("Congress knew how to create exceptions based on transferee's status and culpability. But it chose not to do so when it came to initial transferees of [unauthorized] post-petition transfers …. We will not create such exceptions in Congress's absence.")

deemed part of the consolidated estate as of the No Rust Petition Date is within the reach of § 549 if transferred postpetition without Court authorization. No genuine dispute of material fact remains as to whether the Transfer occurred postpetition without Court approval.

###### C.    Defendant's Arguments Are Without Merit

Smith raises various arguments including (i) defenses under § 550(b), (ii) the property transferred was not property of the estate, (iii) substantive consolidation should not be retroactive and (iv) the case should be deemed an involuntary bankruptcy as to RAW (due to retroactive substantive consolidation) thus making the defense of § 549(b) applicable. These arguments fail and do not prevent entry of summary judgment in favor of the Trustee.

###### 1.    The Defenses Under § 550(b) Are Not Available to Smith

Under the Eleventh Circuit precedent "a literal or rigid interpretation of the statutory term 'initial transferee' in § 550(a) means that the first recipient" of the debtor's funds is the initial transferee.[51] It is undisputed that the $1,212,121.00 in proceeds from the PayMeOn stock sale were remitted directly to Smith making him the initial transferee under § 550(a).[52]

The Eleventh Circuit has "carved out an equitable exception to the literal statutory language of 'initial transferee,' known as the mere conduit or control test,

---

[51] *Martinez v. Hutton (In re Harwell)*, 628 F.3d 1312, 1322 (11th Cir. 2010).

[52] Plaintiff's Statement of Material Facts (Adv. Doc. No. 35) at ¶10; Opponent's Statement of Material Facts (Adv. Doc. No. 77) at ¶ 10.

for initial recipients who are 'mere conduits' with no control" over the transferred funds.[53]  In other words, the initial transferee is the party who exercises control over the funds and has the authority to use the money to one's own purpose.[54]

The record makes clear that this equitable exception is not applicable to Smith. He states that RAW was "his holding company," that RAW acted merely as a conduit in the liquidation of the PayMeOn stock, and that RAW had "no discretion regarding the liquidation of the [PayMeOn] Stock or the use of the proceeds."[55]  Smith's sworn statement filed in support of his Cross-Motion for Summary Judgment evidenced his control over the funds, generally outlining how Smith used the funds once received.[56] Such admissions evidence the lack of any material fact in dispute as to whether Smith was the initial transferee. Because Smith received the funds directly, RAW lacked dominion and control and merely acted at Smith's direction as his holding company, and Smith had the authority and was able to use the money for his own purposes, then it follows that Smith—not RAW—was the initial transferee under § 550(a)(1).

Moreover, RAW, removed from the transfer chain as a mere conduit solidifies further that the $1,212,121.00 was paid directly to Smith, as the initial transferee, by the purchaser of the PayMeOn stock. That characterization does not alter the

---

[53] *Harwell,* 628 F.3d at 1322.

[54] *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988) ("[T]he minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes.").

[55] Defendant's Cross-Motion for Summary Judgment at 4; Defendant's Certification (Adv. Doc. No. 73) ¶28.

[56] Defendant's Certification (Adv. Doc. No. 73) ¶56.

nature of the funds as property of the bankruptcy estate. The stock that was sold belonged to RAW as either No Rust by its fictitious name, or as substantively consolidated with No Rust. Either way, RAW's assets, including the PayMeOn stock and its sale proceeds, were property of the No Rust bankruptcy estate.[57] Thus, the direct payment to Smith does not insulate him from liability as an initial transferee of estate property under § 550(a)(1).

Even assuming, arguendo, that Smith was not the initial transferee but instead a subsequent transferee, he still would not qualify for the good-faith defense under § 550(b). That subsection provides protection only to a transferee "that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer."[58] The burden is on the transferee to establish all three elements.[59]

The term "value" in subsection 550(b) is different from other portions of the Code and does not mean value to the debtor.[60] Subsection 550(b) "looks to what the transferee gave up rather than what the debtor received."[61] Smith offers no evidence that he gave value for the April 2021 Transfer, other than vague and conclusory

---

[57] See *In re Augie/Restivo*, 860 F.2d at 518 ("Substantive consolidation usually results in, *inter alia*, pooling the assets of, and claims against, the two entities"); *Eastgroup Props.*, 935 F.2d at 248 (same).

[58] 11 U.S.C. § 550(b)(1).

[59] See *Kapila v. Funding, Inc. (In re Data Lease Fin. Corp.)*, 176 B.R. 285, 287 (Bankr. S.D. Fla. 1994) (transferee bears burden of proof under § 550(b)).

[60] *Bonded Fin. Servs.*, 838 F.2d at 897.

[61] Id.

statements made by Smith in his certification.[62] Smith's conclusory statement that he contributed proprietary processes in 2017[63]—years prior to the Transfer—relates, at best, to the origination of the stock, not to what value Smith gave up in exchange for receipt of the stock sale proceeds. Similarly, Smith's conclusory assertion that approximately $550,000 of the proceeds was later reinvested into the Debtor or the Corporate Entities[64] fails to establish value under § 550(b) for the Transfer but is instead a generalized accounting of how the funds were spent by Smith. The certification offers no details or explanation with respect to how that "reinvestment" constitutes value under the statute. The Court thus concludes that there is not sufficient evidence in the record upon which a reasonable jury could find that Smith provided value for the Transfer.

Further, Smith does not argue and cannot meet the "good faith" or "without knowledge" prongs. The statute requires consideration of the good faith of the transferee, not the intent of the transferor.[65] After all, the "good faith exception of 550(b)(1) was intended for those situations in which a bad faith transferee materially

---

[62] *Defendant's Certification* (Adv. Doc. No. 73). Rule 56(c) allows "a nonmoving party to dispute a material fact through an affidavit, which must be 'made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *United States v. Stein*, 881 F.3d 853, 856-857 (11th Cir. 2018) (citing *Celotex*, 477 U.S. at 322). An affidavit in support cannot be conclusory, but nothing in Rule 56 prohibits an affidavit from being self-serving. Id.

[63] *Defendant's Reply to the Plaintiff's Response to Defendant's Cross Motion for Summary Judgment* (Adv. Doc. No. 83) at 3.

[64] Id.

[65] 5 Collier on Bankruptcy ¶ 550.03 (16th ed. 2025).

assists in, or in fact enables, the transferring of funds which can not then be recovered, and who derives some demonstrable benefit thereby."[66] Moreover, to be protected under section 550(b)(1), a subsequent transferee also must take "without knowledge of the voidability of the transfer avoided."[67] As the Debtor's principal, Smith was an insider with actual knowledge of the No Rust bankruptcy.[68] Smith orchestrated the postpetition Transfer for his own personal benefit[69] from an entity, RAW, he had himself identified as No Rust's fictitious name in the bankruptcy petition—signed by Smith under penalty of perjury. Accordingly, the Court finds that the record lacks any evidence from which a reasonable jury could conclude that Smith acted in good faith or without knowledge of the Transfer's voidability.

Accordingly, no triable issue of material fact exists as to Smith's liability under § 550(a)(1), and his affirmative defenses under § 550(b), to the extent they apply at all, are both legally and factually deficient. The Court thus concludes that there is not sufficient evidence in the record upon which a reasonable jury could find that Smith was entitled to the good faith defense of § 550(b).

---

[66] *Friedman v. Vinas (In re Trauger),* 109 B.R. 502, 505 (Bankr. S.D. Fla. 1989).

[67] 11 U.S.C. § 550(b)(1).

[68] See *In re Richmond Produce Co.*, 195 B.R. 455, 464 (N.D. Cal. 1996) (that transferee knew of debtor's financial difficulties and knew that recent buyout of debtor was highly leveraged, and that debtor's name appeared as a co-remitter on check, was sufficient to put transferee on notice of the voidability of the transfer).

[69] Smith stipulated that he used a portion of the funds to start and fund expenses associated with his "new company, Rock Rebar Inc." Defendant's Certification (Adv. Doc. No. 73) at ¶ 56.

2.    <u>The Transfer Was Property of the Estate</u>

Smith argues that because RAW was the record owner of the stock, and No Rust was not party to the PayMeOn deal, the estate had no interest in the stock or its proceeds.[70] Smith also claims the funds were not estate property because they were paid to him personally, and not from a Debtor account.[71] These arguments misconstrue the fundamental purpose and effect of substantive consolidation, which explicitly renders distinctions between debtor and substantively consolidated entities irrelevant as a matter of law.[72] When RAW was substantively consolidated, all of its assets—including the PayMeOn stock and the sale proceeds—became property of the No Rust bankruptcy estate by operation of law under 11 U.S.C. § 541. This Court has thus already determined that the stock and any proceeds thereof are property of the estate, and the District Court has affirmed that conclusion.[73]

3.    <u>Objection to the Retroactive Application of Substantive Consolidation is Not a Defense</u>

In a somewhat related argument, Smith takes the position that retroactive application of the Substantive Consolidation Order unfairly imposed retroactive estate ownership of RAW's assets. Both Smith and RAW appealed the Substantive Consolidation Order to the District Court, which affirmed it in full.[74] Eleventh Circuit

---

[70] Cross-Motion for Summary Judgment at 7–10.

[71] Id.

[72] *Eastgroup Props.*, 935 F.2d at 248-250.

[73] Main Doc. No. 536.

[74] Id.

precedent explicitly permits retroactive application of substantive consolidation to ensure equitable outcomes and to address commingling and misuse of corporate form effectively.[75] Therefore, Smith's objections to the retroactive effect of the Substantive Consolidation Order have been conclusively addressed and rejected. Smith is bound by the Substantive Consolidation Order, as under "the law of the case doctrine, a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation."[76]

Courts within the Eleventh Circuit recognize that retroactive application of substantive consolidation does not violate due process where the facts demonstrate pervasive commingling, abuse of corporate form, or other equitable factors requiring consolidation ab initio.[77] Here, the consolidation was based on thorough evidentiary findings made after full notice and opportunity to be heard and affirmed on appeal.

There is a theme here. Smith continues to challenge the factual findings of the Conversion Order and the Substantive Consolidation Order. But this Court's findings and the legal consequence that RAW's assets are property of the No Rust estate, is the law of this case and have been affirmed on appeal by the District Court. In

---

[75] *Eastgroup Props.*, 935 F.2d at 248–50 (affirming retroactive substantive consolidation where corporate boundaries were disregarded).

[76] *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) (citing *Williamsburg Wax Museum v. Historic Figures,* 258 U.S. App. D.C. 124, 810 F.2d 243, 250 (D.C.Cir.1987)). The "law of the case doctrine applies in adversary proceedings in a bankruptcy case, and even between separate adversary proceedings in the same bankruptcy case." *In re Pilgrim's Pride Corp.*, 442 B.R. 522, 530 (Bankr. N.D. Tex. 2010).

[77] *Eastgroup Props.*, 935 F.2d at 248–50.

affirming, the District Court rejected Smith's attempts to relitigate the Conversion Order findings, including those relating to RAW's role and the origin of the PayMeOn stock. The Order Affirming Substantive Consolidation has been appealed by Smith to the Eleventh Circuit Court of Appeals.[78] Thus, given the Conversion Order was never appealed and there is not stay pending appeal of the Substantive Consolidation Order and certainly no reversal of it, to the extent Smith seeks to challenge the findings of the Conversion Order or Substantive Consolidation Order in this proceeding, such challenges are impermissible collateral attacks on this Court's orders and the findings therein.

### 4.    Section 549(b) is Not Applicable

Finally, Smith's reliance on § 549(b) is misplaced. That statutory provision applies exclusively to involuntary cases initiated under § 303 of the Bankruptcy Code, which this is not.[79] This case was commenced by a voluntary petition under Chapter 11, and substantive consolidation—an equitable remedy addressing interentity entanglement—does not transform a voluntary filing into an involuntary case. Smith provides no authority for the proposition that retroactive consolidation creates a statutory "gap period" as contemplated by § 549(b), and the Court is aware of none.[80]

---

[78] Main Doc. No. 538. Rule 8007(a) of the Federal Rules of Bankruptcy Procedure states that a party must ordinarily first move in the bankruptcy court when seeking "a stay of a judgment, order, or decree of the bankruptcy court pending appeal." Fed. R. Bankr. P. 8007(a)(1)(A). On May 9, 2023, the Court entered its *Order Denying Motion for Stay On Appeal* (Main Doc. No. 429).

[79] See 11 U.S.C. §§ 301 and 549(b).

[80] When pressed for a case or other legal precedent in support of Defendant's proposition likening substantive consolidation to an involuntary case under 11 U.S.C. § 303, counsel for Smith was unable to provide any legal authority.

Accordingly, § 549(b) has no application here.

**IV.**    <u>**Conclusion**</u>

The Trustee has demonstrated, and Defendant has failed to rebut, that: (i) the $1,212,121 transfer was a transfer of property of the estate; (ii) the Transfer occurred postpetition; (iii) the Transfer was not authorized under the Bankruptcy Code or by Court order; and (iv) the Defendant was the initial transferee, and even assuming arguendo that he were a subsequent transferee, he does not qualify for the good-faith defense under § 550(b). The record demonstrates without genuine dispute that Smith, as principal and direct beneficiary, caused the Transfer and received funds that belonged to the bankruptcy estate without prior court approval. The Bankruptcy Code does not permit such postpetition transfers to stand. Accordingly, no genuine dispute of material fact remains, and the Trustee has met her burden under Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056 and is entitled to judgment as a matter of law under 11 U.S.C. §§ 549 and 550.

Therefore, the Court **ORDERS**:

1. The Plaintiff's Motion for Summary Judgment is granted.

2. The Defendant's Cross-Motion for Summary Judgment is denied.

3. The postpetition transfer of $1,212,121.00 to Don Smith is avoided pursuant to 11 U.S.C. § 549.

4. The Trustee is authorized to recover $1,212,121.00 from Don Smith pursuant to 11 U.S.C. § 550(a).

5. Plaintiff is directed to upload a separate Final Judgment consistent with this Order.

# # #

Copies To:
All parties in interest